ease of an *actual ouster*, but of an adverse possession of which the grantor is wholly ignorant; and a party is not to be presumed to have violated the law knowingly.

2. The payment of the mortgage money, after the law-day, could only give a right to redeem. The legal title was in the plaintiff, and would there remain until she should transfer it to another. The only relief for the mortgagor is in chancery. Infinite mischiefs would accrue, if the jury were permitted, on the general issue, to settle the business between the mortgagor and mortgagee.

BY THE COURT unanimously,

The judgment was affirmed.

## Lyman *v.* Edwards.

### In the Court below,

JUSTIN LYMAN, and ELIAS LYMAN, *Plaintiffs ;* JONATHAN W. EDWARDS, *Defendant.*

THIS was an action of *assumpsit*, in which, as the foundation of the promise, the following facts were stated : On 31st of March, 1798, *Jacob Ogden* assigned a promissory note, in his favour, against *Turell Tufts*, to the defendant, as collateral security for a debt due from *Ogden* to the defendant, by note. To enable the defendant to collect the note of *Tufts*, and apply the avails to his own use, *Ogden* indorsed *Tufts'* note in blank. On the 14th of April, 1798, put in suit, by foreign attachment, leaving a copy with D. After judgment against C. on this note, and execution returned *non est*, B. still acting as attorney to A. brought a *scire-facias*, in A.'s favour, against D. recovered judgment, took out execution, and collected the money. After the latter judgment, and before B. received the money, A. assigned that judgment to B. authorizing him to receive the money, without any further accountability, than to apply it in satisfaction of his debt against A. Afterwards, the judgment on the *scire-facias* was reversed ; and A. being a bankrupt, D. brought *assumpsit* against B. to recover back the money :—Held, that this action could not be sustained.

*[margin note:]* A. being indebted to B. assigned to him, as collateral security, a promissory note against C. which B. in pursuance of instructions from A. and in his name,

W

1805.

LYMAN
*v.*
EDWARDS.

the defendant commenced a suit against *Tufts*, on his note, by foreign attachment, leaving copies with the plaintiffs ; and at the Hartford City Court, in June following, recovered judgment against *Tufts*, in *Ogden's* name and favour ; on which execution issued, and a *non est inventus* was returned. On the 3d of October, 1798, a *scire-facias* was sued out against the plaintiffs, returnable to the City Court ; and in January, 1799, a judgment was rendered thereon, in favour of *Ogden*, against the plaintiffs. On the 16th of January, execution was taken out on that judgment ; and on the same day, *Ogden* assigned to the defendant, the judgment and execution, in confirmation of the first mentioned assignment. The defendant immediately gave the execution to an officer for collection, informing him, that it was his (the defendant's) property. Within the sixty days, the officer collected the money, and paid it over to the defendant : previous to which, the defendant gave notice to the plaintiffs, through their agents, that the execution was his. At the time the judgment was rendered against the plaintiffs, they gave notice to the defendant, that the claim, on which it was founded, was illegal and unjust. They appealed to the Superior Court, but the appeal was void, because the clerk did not certify, that the duty had been paid. On the 29th of July, 1801, they brought a writ of error on the judgment of the City Court on the *scire-facias ;* and thereupon that judgment was reversed, and damages allowed, to the amount of the execution against them, and interest. On the 11th of September, 1801, they took out execution on the judgment of reversal ; and on the 2d of October following, gave the defendant notice of the premises, and required of him to refund the money, which they had paid, tendering to him, at the same time, their execution against *Ogden*, and a power of attorney to collect the same. But the defendant refused to refund. During the whole time, from the 15th of May, 1798, until the commencement of this action, *Ogden* had been a bankrupt. The declaration concluded in the common form of *assumpsit*.

There was then a special plea, stating *Ogden's* indebtedness to the defendant, and the assignment of *Tufts'* note as collateral security, substantially the same as alleged in the declaration. The plea then stated, that in the subsequent proceedings, the defendant acted *as the attorney of Ogden*, until the 29th of March, 1799, when *Ogden*, by his deed of assignment, made over his judgment and execution to the defendant covenanting that *the defendant should receive the monies on said execution, without any other accounting, than by applying towards payment of Ogden's note to the defendant, in such way, that if the defendant should receive, in satisfaction of said judgment and execution, the full sums of money contained in them, then the said note of said Ogden to the defendant should be void;* by virtue of which assignment, the defendant, on the 13th of September, 1799, received the money on the execution against the plaintiffs, and applied the same in discharge of *Ogden's* debt. The plea also stated, that *Ogden* had petitioned for, and obtained, an act of insolvency, without giving notice to the defendant as a creditor; that the plaintiffs had brought a petition for a new trial on the *scire-facias*, in which they averred, that they had paid the money *to Ogden*; and that, by the judgment of the Superior Court, on their writ of error, they were restored to all that they had suffered.

To this plea there was a replication, which, after oyer of *Ogden's* note to the defendant, averred, that it was still in the defendant's hands, not cancelled, indorsed, released, or discharged.

A demurrer and joinder closed the pleadings.

*Daggett*, and *Perkins*, (of Hartford,) for the plaintiffs.

This is an action of *indebitatus assumpsit*. It is admitted, on the record, that the defendant received the money in question, by force of a judgment and execution against the plaintiffs, in favour of *Jacob Ogden*; which judgment and execu-

*1805.*

LYMAN
*v.*
EDWARDS.

tion were the property of the defandant by an assignment of the note, which was the foundation of them, and also of the aforesaid judgment and execution.——It also appears, that this judgment has been reversed by a regular process of law, and is thereby rendered null and void; and that *Ogden* has, from the time of the assignment of the note, to this time, been a bankrupt. The question then is, can the defendant hold this money against the plaintiffs?

That the consideration, on which the plaintiffs paid the money, has totally failed, is not disputed. Why, then, shall they not recover it back? The only answer deserving of notice is, that his equity is *superior* to that of the plaintiffs. A slight examination of this position, will be sufficient to shew that it is not true. The note in question was not a negotiable note;——the right of the defendant to it was merely equitable; so much money as *Ogden* ought in justice to receive and retain of the plaintiffs, the defendant might receive and retain. Upon the facts conceded, *Ogden* ought not to *retain* a cent; because the judgment, on which it was paid, is reversed. What equity, then, has the defendant? His title to the money was no greater than *Ogden's*, for *Ogden* could give no higher right than he had;——but *Ogden's* title is gone; of course, the defendant's is gone. If indeed, the defendant can bring himself within the rules laid down respecting the *payment of money over* by an agent, it may be inequitable for the plaintiffs to make him repay it. Thus in *Sadler* v. *Evans,* (*a*) *Allen* v. *Dundas,* (*b*) and *Pond* v. *Underwood,* (*c*) the principle is recognized, that a person who pays money over to one having authority to receive it, shall protect himself against a second payment.——That an agent, also, who pays money to his principal, shall not be compelled to refund, though the consideration, on which he received it, has failed, appears from the above, and other cases. But how can the defendant avail himself of these principles? Has he paid the money to *Ogden?* Is his situation with *Og-*

(*a*) 4 *Burr.* 1985.                    (*b*) 3 *Term Rep.* 125.
(*c*) 2 *Ld. Raym.* 1210.

*den* varied, in the least, since the receipt of the money by him. Is there any equitable circumstance now existing, which did not exist, when the plaintiffs paid the money The record furnishes an answer in the negative to all these questions. Where, then, is the defendant's *superior* equity?

A. drops a hundred dollars from his pocket ; B. finds it ; B. to an action brought by A. to recover it, defends himself on the ground of an antecedent indebtedness against A. to that amount.—B. recovers judgment against A. for 100 dollars, and with an execution collects the money.—That judgment is reversed at the suit of A. Can B. defend himself against an action of *indebitatus assumpsit*, on the ground of a previous debt against A. of the same amount ? In these cases, and many others like them, there is a species of equity in the defendant ; but can it be regarded in a court of law ?

In *Buller* v. *Harrison* (*d*) the defendant had a much stronger equity than in the case now before the Court, or in any of the cases supposed. In that case, *Buller*, the plaintiff had paid 2,100*l.* as a loss on a policy of insurance, to *Harrison*, the defendant, as the agent of *Ludlow* & *Shaw*, of New York. This money was paid on the 20th of April, and 6th of May ; and on the latter day, the whole amount was passed by the defendant to the credit of *Ludlow* & *Shaw*, in his account against them, against a debt which they owed him of 3000*l.* On the 17th of the same May, the plaintiff gave notice to the defendant that the loss on which the money was paid was foul, and then brought his action to recover it back. Lord MANSFIELD, and the judges who sat with him, decided, that the plaintiff might well recover ;—at the same time, they admitted the principles to be as laid down in the cases above cited.—They took a distinction, which is clearly warranted by law, and by the principles of natural equity, *viz.* that where the defendant has received money as agent, and paid it over, he shall be protected ; but where in such

(*d*) *Cowp.* 565.

1805.

LYMAN
*v.*
EDWARDS.

case, he has not paid it over, or given any such credit, and there is no variation in his situation, he shall not retain it. The equity, then, spoken of, in this case, is ideal, unknown to our law books, and not founded on any principles.

2. It appears by this record, that the defendant has *expressly* promised to repay this money ; and if so, surely there is consideration sufficient to support the promise.—— But the defendant denies this position, and says that the promise alleged in the declaration is an *implied* one.

Upon demurrer, and after verdict, every *assumpsit* laid in the declaration may be taken to be express ; and in writing too, if necessary to maintain the action. To say the contrary is to say that a promise in writing, or an express promise, cannot be made in a *particular form of words,* which is certainly saying a great deal.

As this point is quite unexpectedly doubted, it may suffice to cite the cases of *Atkins* v. *Hill,* (*e*) and *Hawkes* v. *Saunders,* (*f*) and the opinion of Chief Justice MARSHALL, (*g*) all directly in point, and all treating it as a question of neither doubt, nor difficulty. On the opinions of Lord MANSFIELD, ASHURST, WILLES and BULLER, with that of the Chief Justice of the United States, we may safely leave this question, though these opinions can be supported by a host of concurring authorities.

*Dana,* and *Dwight,* for the defendant.

1. Is the plea a good answer to the declaration ?

They charge the defendant with having received *Ogden's* money from the *Lymans,* as *Ogden's* agent ; and therefore, as it is unconscientious in *Ogden* to keep it, the defendant, in whose hands it is, ought to refund it. We reply, that *Og-*

(*e*) *Cowp.* 284,                 (*f*) *Ibid.* 289,
(*g*) 1 *Cranch* 340,1.

*den* owed the defendant, and gave him *Tufts'* note to collect, in order to pay himself ; that the defendant acted as counsel, until he gained the execution from the City Court, and then took an assignment of it, in payment of his debt ; that, by this assignment, he received the money, and thus had his debt paid. The indorsement of the note, they say, was the assignment ; and the transfer of the execution *in confirmation.*

By their own shewing, the indorsement was a mere power of attorney to collect, and apply money. But if it was intended as an assignment, it cannot be of any avail to the plaintiffs, as the contract was then in parol, but afterwards was reduced to writing in the transfer of the execution. On the written assignment, then, the question arises,—In what capacity did *Edwards* act, in collecting the money ? *Ogden* authorized *Edwards* to receive the avails of this execution ; he covenanted with *Edwards*, that he might apply them in payment of his debt ; and that *Edwards* should be liable to render no other account. He also inserted the clause, which *Edwards* agreed to, that " if " *Edwards* should receive the full sum of the execution, " then *Ogden's* note to *Edwards* should be void." *Edwards*, in virtue of the written assignment, received the money, and applied it in payment of the note. The character of *Edwards*, then, was that of assignee of the execution against the *Lymans*, the avails of which, if received, were to pay and discharge *Ogden's* note to *Edwards*. There was but one condition, *viz.* If *Edwards* received the avails of the execution, without let, or hindrance from *Ogden*. *Ogden* did not hinder ;—*Edwards* did receive and apply the money ; and the note was discharged.

One part of this contract of assignment was, that *Edwards*, if he received the money, and applied it in payment of the note, should not be otherwise accountable. *Edwards'* accountability was to *Ogden* alone ;—*Ogden* alone could stipulate about it ;—he did stipulate ;—*Edwards* complied ;—

of course, he is within the terms of the covenant. *Ogden* has assented to it. When he petitioned the assembly, he omitted this debt to *Edwards*, and *Edwards* had no notice. This was as plain an assent, as if *Ogden* had taken up his note ; and the note was, *ipso facto*, discharged.

Further, the assignment was to be a payment, provided *Ogden* did not interfere. This is apparant from the whole transaction ;—from the situation of the parties ;—and from the nature of the thing assigned.—It was a City Court execution, which would force the money from the *Lymans*, whatever became of the final judgment. There was no condition attached to the assignment, relating to the final judgment in the Superior Court. The terms of the assignment were—*if he should receive the full sums of money contained in* THE JUDGMENT AND EXECUTION, *then Ogden's note should be void :* they were not,—if the judgment in the Superior Court should go the same way, he should hold the money, otherwise he should refund it. On the contrary, he was never to account for it, otherwise than by applying it to the payment of his debt.

2. Is the replication an answer to our plea ?

In the plea, we have alleged, that by reason of the application of the money received on the execution in payment of the note, that note became, and is void. The replication is, that the note is still in our hands,—not cancelled,—nor indorsed,—nor by any instrument in writing, released, or discharged.—This is not an answer to our plea. We have alleged certain facts which took place, by the operation of which, the note is discharged. They reply nothing to this, except that they say, certain other things have not taken place. Instead of this, they ought to have demurred ; because, if the facts alleged by us, do not amount to a legal discharge, the note is not discharged. Cannot a note be discharged in any mode, but by being cancelled, indorsed, or released in writing ? *Full Payment* is

constantly pleaded in bar of suits on promissory notes, and the fact given in evidence, by parol. So also as to *accord and satisfaction.* There is no doubt that a *parol discharge* would be available in our courts. Besides, *Edwards* can be compelled to deliver up the note, whenever *Ogden* shall call upon him. At least, an injunction will be granted against his making any use of it.

3. The declaration is insufficient.

The ground of this action is, that the defendant holds money in his hands, which *ex equo et bono*, he ought to pay to the plaintiffs. From whence arises this equity ? Because, say the plaintiffs, the judgment on which it was forced from us, is reversed. But the inference is not fair. The reversal of the judgment proves nothing, only that there was informality in the process. On the contrary, the judgment having been rendered after a trial on the merits, the presumption is the other way.

Again, the judgment was not in favour of the defendant, nor the reversal against him. The defendant did not, in legal contemplation, receive the money of the *Lymans* ; he received it of *Ogden*. *Ogden* was justly indebted to him ; *Ogden* had a legal right to collect the money of the *Lymans*. It was just in *Ogden* to pay to *Edwards* ;—it was just in *Edwards* to receive it.—Nothing, which has since occurred, between the *Lymans* and *Ogden*, can affect the affairs of *Ogden* and *Edwards*. It is, therefore, conscientious for *Edwards* to retain the money.

The case of *Buller* v. *Harrison*, if attentively considered, will not help the plaintiffs. The Court, in that case, established the main point in favour of *Buller*—viz. That the money in *Harrison's* hands *had not been paid over to the principals* —*Ludlow & Co.* Lord MANSFIELD says—" there was no " alteration in the situation which the defendant and his " principals stood in towards each other ;—there was no

X

1805.

LYMAN
v.
EDWARDS.

" new credit, no acceptance of new bills, no fresh goods " bought, or money advanced." But here the money was *paid over*, the moment *Edwards* received it ; because, on the receipt, *Ogden's* note was discharged. Besides, it is obvious, that Lord MANSFIELD laid great stress upon the fact, of the principals' being out of the country, and being strangers to the plaintiff.

4. The *Lymans* have recovered judgment against *Ogden* for their whole debt. If there ever has existed any claim against *Edwards*, they have waived it. No man is at liberty to claim money first of a principal, and failing there, then of the agent. The ground of complaint in a writ of error is, that the plaintiff has been damnified by the erroneous judgment. The judgment on a reversal is—that the plaintiff be restored to all that he had been damnified. The *Lymans* had been damnified to the amount of the sum paid, and interest. They recovered that sum. In the petition for a new trial, they considered it in the light of a *payment to Ogden*.

5. The state of the pleadings will shew, that the cases of *Atkins* v. *Hill*, &c. do not apply. We have not demurred to their declaration, and by that demurrer admitted the promise ;—but the plaintiff has demurred to our rejoinder, which certainly cannot extort from the defendant an admission of the promise laid in the plaintiff's declaration.

BY THE COURT, HOSMER, *Asst.* dissenting.

The judgment was affirmed.